IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

SUSAN TREAT and ASHLEY WALKER,   *
Individually and next friend   *
and mother of MADISON WALKER,   *
                                  *
    Plaintiffs,               *
                                  *
    v.                             *
                                  *       CV 114-174
                                  *
DANIEL T. LOWE and MATTHEW   *
P. PERKINS,                 *
                                  *
    Defendants.               *

## O R D E R

Currently before the Court are Defendants' motions for summary judgment. (Docs. 21, 26.) For the reasons discussed below, the motions are **GRANTED in part and DENIED in part**.

### I.   Background

This case is based on Defendants' mistaken, warrantless search of Plaintiffs' home at 133 Powerline Drive in Burke County Georgia. Although many facts in this case are contested, because this matter is at summary judgment, the Court views the

facts in the light most favorable to Plaintiffs.[1] Phillip Hambrick, an investigator with the Richmond County Sheriff's Office, obtained multiple search warrants on September 21, 2012 as part of an ongoing narcotics investigation into alleged narcotics dealer Donta Betha. The warrants Hambrick obtained included a warrant to search 173 Powerline Drive, Blythe, Georgia in Burke County, which is located in a mobile-home community. (Doc. 21-3.) Hambrick also obtained a warrant to search another residence inside the same community. (Id.)

On September 30, 2012, Hambrick contacted the Burke County Sheriff's Office and other officers inside the Richmond County Sheriff's Office and requested assistance in executing the search warrants. Defendants were among those chosen to participate. Defendant Lowe is an investigator with the Burke County Sheriff's Office, and Defendant Perkins is an investigator with the Richmond County Sheriff's Office.

On October 1, 2012, Defendants, along with 30-50 other officers, attended a pre-raid briefing held by Hambrick. At the briefing, Hambrick informed the officers that he had obtained the search warrants, read the addresses of the locations, and divided the officers into groups based on the location they were to search. (Doc. 25 ("Perkins Dep.") at 25-29.) Hambrick

---

[1] Factual assertions in this Order's background section that do not cite the record are taken from the parties' statements of undisputed facts. (Docs. 21-4, 27, 31, 35.)

2

placed both Defendants in the group assigned to search 173 Powerline Drive. (Id. at 28-29) Although Hambrick undisputedly assigned Perkins and Lowe to execute the search warrant at 173 Powerline Drive, the evidence indicates that he did not officially designate someone leader of that group. (Id. at 47-48.)

Following this assignment, Hambrick instructed Perkins to drive a white van, which was occupied by six to seven other officers, to the location. Lowe drove his personal vehicle. Prior to leaving the briefing location, the officers made sure they were all on the same radio frequency to help facilitate the simultaneous execution of the warrants. (Id. at 31-32.) Defendants then left for Powerline Drive in a procession that included officers headed to the other location in the mobile-home community. (Id. at 34-35.) Perkins maintains that he was immediately behind Lowe and that Lowe pulled off the road at 133 Powerline Drive. (Id. at 36.) Lowe recalls that he, pursuant to instructions, followed Perkins in the van and that the van pulled into 133 Powerline Drive first. (Doc. 24 ("Lowe Dep.") at 26-28.)

In any event, Defendants pulled into 133 Powerline Drive and exited their vehicles around 10:30 a.m. Perkins, followed by Lowe and then the other officers, entered 133 Powerline Drive

3

through the back door.[2] (Doc. 23 ("Treat Dep.") at 64, 111.) Immediately upon entry, the officers, with their weapons drawn, encountered Plaintiff Susan Treat in her laundry room and pinned her against the wall. (Id. at 57-58.) The officers then followed Treat into the living room where Madison Walker, Treat's three-year-old granddaughter, was watching television. (Id. at 58.) The officers kept Treat and her granddaughter on the floor with their weapons aimed at Treat. (Id. at 59.) Contemporaneously, two or three other officers proceeded to search the home and found Ashley Walker, Treat's daughter, who was pregnant at the time, in bed. (Id. at 59.) Those officers handcuffed Ashley Walker, brought her into the living room, and continued to search the home. (Id. at 59-60.) The officers in the living room questioned Treat and Walker about Donta Betha's whereabouts, something Treat and Walker unsurprisingly knew nothing about. (Id. at 60-61.) Eventually, according to Treat, an officer entered through the back door and informed Perkins that they were in the wrong house. (Id. at 62.) According to Perkins, Lowe actually raised the question and asked if the officers were in the right location and pointed out that the address was "clearly affixed to the front of the residence."

---

[2] The door through which Lowe entered is disputed in the case. Both Lowe and Perkins maintain that Lowe entered through the front door. Because the Court is required to take the facts in the light most favorable to Plaintiffs, and because Plaintiff Treat testified unequivocally that Lowe entered through the back door, the Court assumes that Lowe entered through the back door.

4

(Id. at 58.) Once the officers realized their mistake, they quickly left for 173 Powerline Drive. (Id. at 62.)

In August 2014, Plaintiffs filed this action asserting Fourth and Fourteenth Amendment violations pursuant to 42 U.S.C. § 1983 and state-law claims. (Doc. 1.) Defendants now move for summary judgment and claim they are entitled to qualified immunity with respect to the alleged constitutional violations and official immunity with respect to the state-law claims.

## II. **Legal Standard**

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor." U.S. v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the

motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways—by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608.

If—and only if—the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. If the

movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

In this action, the Clerk of the Court gave Plaintiffs notice of the motions for summary judgment and informed them of the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default. (Docs. 28-29.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the motion is now ripe for consideration.

## III. **Discussion**

**1. Qualified Immunity**

When an official who has been sued in his individual capacity claims he is entitled to qualified immunity, the Court utilizes a two-step analysis. <u>Hartsfield v. Lemacks</u>, 50 F.3d 950, 953 (11th Cir. 1995). "First, the defendant government official must prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." <u>Id.</u> If the defendant does so, "the plaintiff must then demonstrate that the defendant violated clearly established law based upon objective standards." <u>Id.</u> When the law at issue is clearly established, if the record reveals that "a genuine issue of material fact as to whether the defendant's conduct violated the right accruing to the plaintiff" under that law, the defendant will not be entitled to summary judgment on qualified immunity. <u>Rich v. Dollar</u>, 841 F.2d 1558, 1565 (11th Cir. 1988). That is, if the evidence viewed in the light most favorable to the plaintiff is sufficient for a reasonable jury to conclude that the defendant violated her constitutional rights, the Court should deny summary judgment. <u>O'Rourke v. Hayes</u>, 378 F.3d 1201, 1206 (11th Cir. 2004). In this case, neither side disputes whether Defendants were acting within the scope of their discretionary authority.

8

It is "well-established as a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." Hartsfield, 50 F.3d at 954 (citations omitted) (internal quotations marks omitted). However, an accidental search of the wrong location may not violate the Fourth Amendment when "'the officers' conduct was consistent with a reasonable effort to ascertain and identify the place intended to be searched . . . .'" Id. at 955-56 (quoting Maryland v. Garrison, 480 U.S. 79, 88-89 (1987)). Accordingly, it is clearly established that "absent probable cause and exigent circumstances, a warrantless search of a residence violates the Fourth Amendment, unless the officers engage in reasonable efforts to avoid error." Id. at 955. But officers who do not independently verify the location of a search may avoid liability when they reasonably rely on a superior officer's erroneous direction. See Id. at 956; see also Shepard v. Hallandale Beach Police Dep't, 398 F. App'x 480, 483 (11th Cir. 2010).

Citing Hartsfield v. Lemacks, 50 F.3d 950 (11th Cir. 1995), Defendants rely heavily on the argument that they were not involved in the underlying investigation and that they were simply taking orders from Hambrick. In fact, it is essentially undisputed that Defendants were not involved in the underlying investigation and that they were both only assisting with the

9

execution of the search warrants. Nonetheless, the holding in Hartsfield is easily distinguishable, and Defendants' arguments miss the mark. In Hartsfield, a deputy sheriff conducted an investigation, which included visiting a residence with an informant who purchased drugs at the location. Id. at 951. Based on his investigation and the drug transaction, the officer obtained a search warrant for the home. Id. The following day, the officer led a team on a raid at the wrong address. Id. at 952-53. After determining that clearly established law made a warrantless entry into a home unlawful unless the officers engaged in reasonable efforts to avoid error, the court found that the lead officer violated clearly established law. Id. at 955. Specifically, the court determined that the lead officer did not perform cautionary measures—such as checking the address—to ensure that the officers were entering the correct home. Id. In its concluding paragraph, the court determined that the assisting officers were entitled to qualified immunity because "nothing in the record indicate[d] that these officers acted unreasonably in following [the leading officer's] lead, or that they knew or should have known" that the search would violate the plaintiffs' rights. Id. at 956.

Based on this holding, the Eleventh Circuit has subsequently stated that "assisting officers during a search are entitled to qualified immunity when there is no indication that

they acted unreasonably in following the lead of a primary officer or that they knew or should have known that their conduct might result in a Fourth Amendment violation, even when the primary officer is not entitled to qualified immunity." Shepard, 398 F. App'x at 483.

Unlike the assisting officers in Hartsfield, there is no evidence that Defendants here reasonably followed a lead officer into the home. Moreover, because the evidence indicates that Hambrick gave Defendants the correct address, they should have known that entering Plaintiffs' home would violate Plaintiffs' constitutional rights. Had Defendants merely followed Hambrick's lead or had Hambrick incorrectly told them to raid 133 Powerline Drive, the facts arguably would fall within Hartsfield's holding. But because Defendants were the officers executing the search warrant, they were required to make reasonable efforts to avoid error. Defendants did not shed their responsibility to engage in reasonable efforts to ascertain the correct location to be searched simply because a superior officer directed their overall mission. Instead, the holding in Hartsfield applies narrowly to the situation where inferior officers reasonably follow their superior's lead, not when they erroneously follow instructions.

Here, both officers were sent to execute a search warrant and entered the wrong home. Although Defendants point fingers

11

at each other with respect to who picked the house, a reasonable jury could conclude that neither exercised reasonable efforts to determine whether they were entering the correct house. It is undisputed that Defendants were in radio contact with other officers but did not make contact to verify the address. In fact, there is no evidence that either Defendant communicated with anyone to ensure they entered the correct residence. Furthermore, this raid occurred during the daylight hours, there is evidence that the address was on the front of the residence, and there is no evidence that Defendants reasonably confused 133 with 173 Powerline Drive.

Also in an attempt to square this case with Hartsfield's holding, Defendants both rely on the fact that neither had ever seen or possessed the search warrant. This argument also falls short. In a case like Hartsfield, an assisting officer does not possess the search warrant because the lead officer does, making it reasonable for the inferior officers to trust the superior officer's instruction. See White v. McLain, No. 14-502-KD-M, 2015 WL 7196412, at *7-8 (S.D. Ala. Nov. 16, 2015). Here, Hambrick correctly instructed Defendants to search 173 Powerline Drive, and Defendants were required to make reasonable efforts to ensure they reached the correct residence, even if they did not physically possess the warrant.

12

Viewing the evidence in the light most favorable to Plaintiffs, a reasonable jury could conclude that Defendants failed to engage in reasonable efforts to avoid error, Hartsfield, 50 F.3d at 955, and, therefore, violated Plaintiffs' clearly established constitutional rights. Accordingly, the Court **DENIES** summary judgment on this issue.

## 2. Official Immunity

Defendants also move for summary judgment on Plaintiffs' state-law claims based on official immunity. Under Georgia law, official immunity "'protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption.'" Grammens v. Dollar, 697 S.E.2d 775, 777 (Ga. 2010) (quoting Cameron v. Lang, 549 S.E.2d 341, 344 (Ga. 2001)). That is, "a public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure." Id. (quoting Lang, 549 S.E.2d at 344). Therefore, a public official will not be held liable for negligently performing a discretionary act. Gilbert v. Richardson, 452 S.E.2d 476, 483 (Ga. 1994).

"A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely execution of a specific

13

nature of the act. If anything, it is evidence that Defendants performed this discretionary act negligently or that they, after exercising personal deliberation and judgment, Grammens, 697 S.E.2d at 777, came to an erroneous conclusion.

To support their argument that reaching the correct house is ministerial, Plaintiffs cite Hambrick's instructions and the Fourth Amendment. First, Hambrick instructed Defendants to execute a search warrant, a discretionary act. The fact that he gave Defendants the correct address did not eliminate the need for Defendants to exercise judgment in executing the search warrant. Moreover, the Fourth Amendment does not create a ministerial act. That is, the Fourth Amendment does not mandate the simple, specific task of locating the correct residence.[3] Instead, the Fourth Amendment protects individuals from unreasonable searches and seizures.

Because Defendants were attempting to execute a search warrant when they entered Plaintiffs' home, and because there is no ministerial act at issue in this case, Defendants are entitled to official immunity under Georgia law.[4] Accordingly, the Court **GRANTS** Defendants' motions on this issue.

---

[3] Indeed, as discussed above, an officer who enters the wrong home does not violate the Fourth Amendment when he performs reasonable efforts to avoid error. Maryland v. Garrison, 480 U.S. 79, 88-89 (1987).

[4] Plaintiffs' reliance on Heller v. City of Atlanta, 659 S.E.2d 617 (Ga. Ct. App. 2008), is also misplaced. In Heller, the court determined that the act at issue was a simple, ministerial act. Id. at 621-22. The court discussed that it was immaterial that the defendant had some discretion as to

15

duty." Grammens, 697 S.E.2d at 777 (quoting McDowell v. Smith, 678 S.E.2d 922, 924 (Ga. 2009)). Conversely, a discretionary act "calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." Id. (quoting McDowell, 678 S.E.2d at 924). Executing a search warrant is a discretionary act under Georgia law. Lang, 549 S.E.2d at 346 (citing Kidd v Coates, 518 S.E.2d 124, 125 (Ga. 1999)); Jones v. Unified Gov't of Athens-Clarke Cty., No. 3:13-CV-40 (CDL), 2014 WL 3778938, at *8 (M.D. Ga. July 31, 2014) ("It is clear that executing a search warrant . . . is not a simple act requiring no judgment.").

In this case, Plaintiffs concede that there is no evidence of malice and that executing a search warrant is discretionary. Nonetheless, Plaintiffs argue that Defendants are not entitled to official immunity. Essentially, Plaintiffs assert that their claims are not based on the execution of a search warrant because Defendants entered the wrong house. And, according to Plaintiffs, entering the correct house is a ministerial act. The Court disagrees. It is undisputed that Defendants were attempting to execute a search warrant when they entered Plaintiffs' home and were, therefore, performing a discretionary act. See Lang, 549 S.E.2d at 346. The fact that Defendants entered the wrong home does not eliminate the discretionary

## IV. Conclusion

For the reasons stated above, Defendant Lowe's motion for summary judgment (doc. 21) is **GRANTED in part and DENIED in part,** and Defendant Perkins's motion for summary judgment (doc. 26) is **GRANTED in part and DENIED in part.**

**ORDER ENTERED** at Augusta, Georgia this 24th day of March, 2016.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

how to perform the ministerial act. Id. at 621. Accordingly, he could be held liable for his negligent performance of the ministerial act. Here, however, the law is clear that executing a search warrant is discretionary, and there is no indication that locating the correct house is a separate, simple task. Therefore, Defendants were not exercising discretion about how they performed a ministerial act; they were performing a discretionary act.

16